# STANDING DECLARATION OF PUBLIC EMPLOYEES FOR ENVIRONMENTAL RESPONSIBILITY

I, Timothy Whitehouse, declare the following, pursuant to 28 U.S.C. 1746, based on my personal knowledge and to which I am competent to testify:

1. I reside in Poolesville, MD, and I am the Executive Director and a Board Member of Public Employees for Environmental Responsibility (PEER).

2. PEER is a nonprofit, tax-exempt corporation incorporated in Washington, D.C., and headquartered in Silver Spring, MD. PEER works nationwide with government scientists, land managers, environmental law enforcement agents, rangers, and other resource professionals committed to responsible management of America's public resources, including National Parks and other public lands.

3. I have more than 25 years of experience working on a wide range of environmental issues with governments, businesses, nonprofit organizations, and community groups. I was a Senior Attorney at the United States Environmental Protection Agency and was head of the Law and Policy Program at the North American Commission for Environmental Cooperation in Montreal, Canada. I have worked as a consultant for companies on environmental compliance issues and with nonprofit organizations focusing on clean energy issues. I was also the Executive Director of Chesapeake Physicians for Social Responsibility, a health advocacy group working to address climate change, toxics pollution, and nuclear disarmament issues. I earned a Juris Doctorate and Bachelor of Arts from Emory University and a Master of Arts from New York University.

4. Overflights threaten our national, iconic lands. Overflights cause loud noise and disturb the peace and quiet, interfering with visitors' enjoyment and disturbing wildlife. This impacts both myself and PEER's supporters.

5. Since 2017, PEER has dedicated significant time and resources to litigating the issue of overflights in National Parks across the country, including more than two dozen impacted park units. This included past separate litigation: *In Re Public Employees for Environmental Responsibility*, Case No. 19-1044, U.S. Court of Appeals for the DC Circuit. That successful Writ of Mandamus case involved, among other park units, each of the San Francisco area park units involved in the present litigation against the Federal Aviation Administration and the National Park Service: Golden Gate National Recreation Area, Muir Woods National Monument, San Francisco Maritime National Historical Park, and Point Reyes National Seashore.

6. PEER continues to be a leading voice for those impacted by National Park overflights and has received extensive support for our work. The present case involves yet another improper air tour management plan (ATMP) approval and is causing PEER to alter our staffing and resource commitments to oppose this new ATMP. Thus, the approval of the San Francisco area ATMP directly impacted our ability to carry out our mission.

7. My and PEER's opportunity to understand the environmental impacts and, therefore, to fully comment on the impacts of the proposal was harmed by the failure of the National Park Service (NPS) and Federal Aviation Administration (FAA) to circulate a draft Environmental Assessment (EA) or Environmental Impact Statement (EIS) to comment on. In other words, the agencies' reliance on a Categorical Exclusion under the National

Environmental Policy Act (NEPA) harmed us by denying me and PEER a voice in a major regulatory change.

8. The San Francisco area ATMP continues to harm PEER's supporters and me. The number of flights allowed, combined with the failure to impose an adequate altitude requirement above which planes can fly, disturbs the peace and quiet of these areas.

9. These areas will suffer future harm unless the ongoing injuries are corrected. Compelling the agencies to do full NEPA compliance will allow me and PEER to comment on a future EA or EIS and will likely result in reduced environmental impacts, such as tighter restrictions on the plane and helicopter flights after more careful analysis. Therefore, a ruling reversing the ATMP should result in fewer and better-regulated overflights, which will reduce the harm.

I declare under penalty of perjury that the foregoing is true and correct.

Executed at Silver Spring, Maryland, on April 11, 2023.

_____
Timothy Whitehouse