NOT YET SCHEDULED FOR ORAL ARGUMENT

No. 23-1067

_____

**UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT**

_____

MARIN AUDUBON SOCIETY, et al.,
*Petitioners,*

v.

U.S. DEPARTMENT OF TRANSPORTATION, et al.,
*Respondents.*

_____

**STATUTORY AND REGULATORY ADDENDUM**

## ADDENDUM OF STATUTES AND REGULATIONS

ADDENDUM OF STATUTES AND REGULATIONS ............................................1

5 U.S.C. § 706. SCOPE OF REVIEW ........................................................................2

42 U.S.C. § 4332. COOPERATION OF AGENCIES; REPORTS; AVAILABILITY
OF INFORMATION; RECOMMENDATIONS; INTERNATIONAL AND
NATIONAL COORDINATION OF EFFORTS .........................................................3

49 U.S.C § 40128. OVERFLIGHTS OF NATIONAL PARKS ...............................5

49 U.S.C § 46110(a). JUDICIAL REVIEW ...........................................................16

40 C.F.R. § 1505.2. RECORD OF DECISION IN CASES REQUIRING
ENVIRONMENTAL IMPACT STATEMENTS .....................................................17

40 C.F.R. § 1508.4. CATEGORICAL EXCLUSION .............................................18

40 C.F.R. § 1508.10. ENVIRONMENTAL DOCUMENT .....................................18

43 C.F.R. § 46.215. CATEGORICAL EXCLUSIONS: EXTRAORDINARY
CIRCUMSTANCES ................................................................................................18

# 5 U.S.C. § 706. SCOPE OF REVIEW

To the extent necessary to decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. The reviewing court shall—

(1) compel agency action unlawfully withheld or unreasonably delayed; and

(2) hold unlawful and set aside agency action, findings, and conclusions found to be—

(A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;

(B) contrary to constitutional right, power, privilege, or immunity;

(C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right;

(D) without observance of procedure required by law;

(E) unsupported by substantial evidence in a case subject to sections 556 and 557 of this title [5 USCS §§ 556 and 557] or otherwise reviewed on the record of an agency hearing provided by statute; or

(F) unwarranted by the facts to the extent that the facts are subject to trial de novo by the reviewing court.

In making the foregoing determinations, the court shall review the whole record or those parts of it cited by a party, and due account shall be taken of the rule of prejudicial error.

## 42 U.S.C. § 4332. COOPERATION OF AGENCIES; REPORTS; AVAILABILITY OF INFORMATION; RECOMMENDATIONS; INTERNATIONAL AND NATIONAL COORDINATION OF EFFORTS

The Congress authorizes and directs that, to the fullest extent possible: (1) the policies, regulations, and public laws of the United States shall be interpreted and administered in accordance with the policies set forth in this Act [42 USCS §§ 4321 et seq.], and (2) all agencies of the Federal Government shall—

(A) utilize a systematic, interdisciplinary approach which will ensure the integrated use of the natural and social sciences and the environmental design arts in planning and in decision-making which may have an impact on man's environment;

(B) identify and develop methods and procedures, in consultation with the Council on Environmental Quality established by title II of this Act [42 USCS §§ 4341 et seq.], which will ensure that presently unquantified environmental amenities and values may be given appropriate consideration in decision-making along with economic and technical considerations;

(C) consistent with the provisions of this Act and except where compliance would be inconsistent with other statutory requirements, include in every recommendation or report on proposals for legislation and other major Federal actions significantly affecting the quality of the human environment, a detailed statement by the responsible official on—

(i) reasonably foreseeable environmental effects of the proposed agency action;

(ii) any reasonably foreseeable adverse environmental effects which cannot be avoided should the proposal be implemented;

(iii) a reasonable range of alternatives to the proposed agency action, including an analysis of any negative environmental impacts of not implementing the proposed agency action in the case of a no action alternative, that are technically and economically feasible, and meet the purpose and need of the proposal;

(iv) the relationship between local short-term uses of man's environment and the maintenance and enhancement of long-term productivity; and

(v) any irreversible and irretrievable commitments of Federal resources which would be involved in the proposed agency action should it be implemented.

3

Prior to making any detailed statement, the head of the lead agency shall consult with and obtain the comments of any Federal agency which has jurisdiction by law or special expertise with respect to any environmental impact involved. Copies of such statement and the comments and views of the appropriate Federal, State, and local agencies, which are authorized to develop and enforce environmental standards, shall be made available to the President, the Council on Environmental Quality and to the public as provided by section 552 of title 5, United States Code, and shall accompany the proposal through the existing agency review processes;

(D) ensure the professional integrity, including scientific integrity, of the discussion and analysis in an environmental document;

(E) make use of reliable data and resources in carrying out this Act;

(F) consistent with the provisions of this Act, study, develop, and describe technically and economically feasible alternatives;

(G) any detailed statement required under subparagraph (C) after January 1, 1970, for any major Federal action funded under a program of grants to States shall not be deemed to be legally insufficient solely by reason of having been prepared by a State agency or official, if:

(i) the State agency or official has statewide jurisdiction and has the responsibility for such action,

(ii) the responsible Federal official furnishes guidance and participates in such preparation,

(iii) the responsible Federal official independently evaluates such statement prior to its approval and adoption, and

(iv) after January 1, 1976, the responsible Federal official provides early notification to, and solicits the views of, any other State or any Federal land management entity of any action or any alternative thereto which may have significant impacts upon such State or affected Federal land management entity and, if there is any disagreement on such impacts, prepares a written assessment of such impacts and views for incorporation into such detailed statement.
The procedures in this subparagraph shall not relieve the Federal official of his responsibilities for the scope, objectivity, and content of the entire statement or of any other responsibility under this Act [42 USCS §§ 4321 et seq.]; and further, this

subparagraph does not affect the legal sufficiency of statements prepared by State agencies with less than statewide jurisdiction. [;]

(H) study, develop, and describe appropriate alternatives to recommended courses of action in any proposal which involves unresolved conflicts concerning alternative uses of available resources;

(I) consistent with the provisions of this Act, recognize the worldwide and longrange character of environmental problems and, where consistent with the foreign policy of the United States, lend appropriate support to initiatives, resolutions, and programs designed to maximize international cooperation in anticipating and preventing a decline in the quality of mankind's world environment;

(J) make available to States, counties, municipalities, institutions, and individuals, advice and information useful in restoring, maintaining, and enhancing the quality of the environment;

(K) initiate and utilize ecological information in the planning and development of resource-oriented projects; and

(L) assist the Council on Environmental Quality established by title II of this Act [42 USCS §§ 4341 et seq.].


## 49 U.S.C § 40128. OVERFLIGHTS OF NATIONAL PARKS

(a) In general.

(1) General requirements. A commercial air tour operator may not conduct commercial air tour operations over a national park or tribal lands, as defined by this section, except—

(A) in accordance with this section;

(B) in accordance with conditions and limitations prescribed for that operator by the Administrator; and

(C) in accordance with any applicable air tour management plan or voluntary agreement under subsection (b)(7) for the park or tribal lands.

(2) Application for operating authority.

(A) Application required. Before commencing commercial air tour operations over a national park or tribal lands, a commercial air tour operator shall apply to the Administrator for authority to conduct the operations over the park or tribal lands.

(B) Competitive bidding for limited capacity parks. Whenever an air tour management plan limits the number of commercial air tour operations over a national park during a specified time frame, the Administrator, in cooperation with the Director, shall issue operation specifications to commercial air tour operators that conduct such operations. The operation specifications shall include such terms and conditions as the Administrator and the Director find necessary for management of commercial air tour operations over the park. The Administrator, in cooperation with the Director, shall develop an open competitive process for evaluating proposals from persons interested in providing commercial air tour operations over the park. In making a selection from among various proposals submitted, the Administrator, in cooperation with the Director, shall consider relevant factors, including—

(i) the safety record of the person submitting the proposal or pilots employed by the person;

(ii) any quiet aircraft technology proposed to be used by the person submitting the proposal;

(iii) the experience of the person submitting the proposal with commercial air tour operations over other national parks or scenic areas;

(iv) the financial capability of the person submitting the proposal;

(v) any training programs for pilots provided by the person submitting the proposal; and

(vi) responsiveness of the person submitting the proposal to any relevant criteria developed by the National Park Service for the affected park.

(C) Number of operations authorized. In determining the number of authorizations to issue to provide commercial air tour operations over a national park, the Administrator, in cooperation with the Director, shall take into consideration the

provisions of the air tour management plan, the number of existing commercial air tour operators and current level of service and equipment provided by any such operators, and the financial viability of each commercial air tour operation.

(D) Cooperation with NPS. Before granting an application under this paragraph, the Administrator, in cooperation with the Director, shall develop an air tour management plan in accordance with subsection (b) and implement such plan.

(E) Time limit on response to ATMP applications. The Administrator shall make every effort to act on any application under this paragraph and issue a decision on the application not later than 24 months after it is received or amended.

(F) Priority. In acting on applications under this paragraph to provide commercial air tour operations over a national park, the Administrator shall give priority to an application under this paragraph in any case in which a new entrant commercial air tour operator is seeking operating authority with respect to that national park.
(3) Exception. Notwithstanding paragraph (1), commercial air tour operators may conduct commercial air tour operations over a national park under part 91 of title 14, Code of Federal Regulations if—

(A) such activity is permitted under part 119 of such title;

(B) the operator secures a letter of agreement from the Administrator and the national park superintendent for that national park describing the conditions under which the operations will be conducted; and

(C) the total number of operations under this exception is limited to not more than five flights in any 30-day period over a particular park.

(4) Special rule for safety requirements. Notwithstanding subsection (c), an existing commercial air tour operator shall apply, not later than 90 days after the date of the enactment of this section [enacted April 5, 2000], for operating authority under part 119, 121, or 135 of title 14, Code of Federal Regulations. A new entrant commercial air tour operator shall apply for such authority before conducting commercial air tour operations over a national park or tribal lands. The Administrator shall make every effort to act on any such application for a new entrant and issue a decision on the application not later than 24 months after it is received or amended.

(5) Exemption for national parks with 50 or fewer flights each year.

(A) In general. Notwithstanding paragraph (1), a national park that has 50 or fewer commercial air tour operations over the park each year shall be exempt from the requirements of this section, except as provided in subparagraph (B).

(B) Withdrawal of exemption. If the Director determines that an air tour management plan or voluntary agreement is necessary to protect park resources and values or park visitor use and enjoyment, the Director shall withdraw the exemption of a park under subparagraph (A).

(C) List of parks.

(i) In general. The Director and Administrator shall jointly publish a list each year of national parks that are covered by the exemption provided under this paragraph.

(ii) Notification of withdrawal of exemption. The Director shall inform the Administrator, in writing, of each determination to withdraw an exemption under subparagraph (B).

(D) Annual report. A commercial air tour operator conducting commercial air tour operations over a national park that is exempt from the requirements of this section shall submit to the Administrator and the Director a report each year that includes the number of commercial air tour operations the operator conducted during the preceding 1-year period over such park.

(b) Air tour management plans.

(1) Establishment.

(A) In general. The Administrator, in cooperation with the Director, shall establish an air tour management plan for any national park or tribal land for which such a plan is not in effect whenever a person applies for authority to conduct a commercial air tour operation over the park. The air tour management plan shall be developed by means of a public process in accordance with paragraph (4).

(B) Objective. The objective of any air tour management plan shall be to develop acceptable and effective measures to mitigate or prevent the significant adverse impacts, if any, of commercial air tour operations upon the natural and cultural resources, visitor experiences, and tribal lands.

8

(C) Exception. An application to begin or expand commercial air tour operations at Crater Lake National Park or Great Smoky Mountains National Park may be denied without the establishment of an air tour management plan by the Director of the National Park Service if the Director determines that such operations would adversely affect park resources or visitor experiences.

(2) Environmental determination. In establishing an air tour management plan under this subsection, the Administrator and the Director shall each sign the environmental decision document required by section 102 of the National Environmental Policy Act of 1969 (42 U.S.C. 4332) which may include a finding of no significant impact, an environmental assessment, or an environmental impact statement and the record of decision for the air tour management plan.

(3) Contents. An air tour management plan for a national park—

(A) may prohibit commercial air tour operations over a national park in whole or in part;

(B) may establish conditions for the conduct of commercial air tour operations over a national park, including commercial air tour routes, maximum or minimum altitudes, time-of-day restrictions, restrictions for particular events, maximum number of flights per unit of time, intrusions on privacy on tribal lands, and mitigation of noise, visual, or other impacts;

(C) shall apply to all commercial air tour operations over a national park that are also within ½ mile outside the boundary of a national park;

(D) shall include incentives (such as preferred commercial air tour routes and altitudes, relief from caps and curfews) for the adoption of quiet aircraft technology by commercial air tour operators conducting commercial air tour operations over a national park;

(E) shall provide for the initial allocation of opportunities to conduct commercial air tour operations over a national park if the plan includes a limitation on the number of commercial air tour operations for any time period; and

(F) shall justify and document the need for measures taken pursuant to subparagraphs (A) through (E) and include such justifications in the record of decision.

9

(4) Procedure. In establishing an air tour management plan for a national park or tribal lands, the Administrator and the Director shall—

(A) hold at least one public meeting with interested parties to develop the air tour management plan;

(B) publish the proposed plan in the Federal Register for notice and comment and make copies of the proposed plan available to the public;

(C) comply with the regulations set forth in sections 1501.3 and 1501.5 through 1501.8 of title 40, Code of Federal Regulations (for purposes of complying with the regulations, the Federal Aviation Administration shall be the lead agency and the National Park Service is a cooperating agency); and

(D) solicit the participation of any Indian tribe whose tribal lands are, or may be, overflown by aircraft involved in a commercial air tour operation over the park or tribal lands to which the plan applies, as a cooperating agency under the regulations referred to in subparagraph (C).

(5) Judicial review. An air tour management plan developed under this subsection shall be subject to judicial review.

(6) Amendments. The Administrator, in cooperation with the Director, may make amendments to an air tour management plan. Any such amendments shall be published in the Federal Register for notice and comment. A request for amendment of an air tour management plan shall be made in such form and manner as the Administrator may prescribe.

(7) Voluntary agreements.

(A) In general. As an alternative to an air tour management plan, the Director and the Administrator may enter into a voluntary agreement with a commercial air tour operator (including a new entrant commercial air tour operator and an operator that has interim operating authority) that has applied to conduct commercial air tour operations over a national park to manage commercial air tour operations over such national park.

(B) Park protection. A voluntary agreement under this paragraph with respect to commercial air tour operations over a national park shall address the management

issues necessary to protect the resources of such park and visitor use of such park without compromising aviation safety or the air traffic control system and may—

(i) include provisions such as those described in subparagraphs (B) through (E) of paragraph (3);

(ii) include provisions to ensure the stability of, and compliance with, the voluntary agreement; and

(iii) provide for fees for such operations.

(C) Public review. The Director and the Administrator shall provide an opportunity for public review of a proposed voluntary agreement under this paragraph and shall consult with any Indian tribe whose tribal lands are, or may be, flown over by a commercial air tour operator under a voluntary agreement under this paragraph. After such opportunity for public review and consultation, the voluntary agreement may be implemented without further administrative or environmental process beyond that described in this subsection.

(D) Termination.

(i) In general. A voluntary agreement under this paragraph may be terminated at any time at the discretion of—

(I) the Director, if the Director determines that the agreement is not adequately protecting park resources or visitor experiences; or

(II) the Administrator, if the Administrator determines that the agreement is adversely affecting aviation safety or the national aviation system.

(ii) Effect of termination. If a voluntary agreement with respect to a national park is terminated under this subparagraph, the operators shall conform to the requirements for interim operating authority under subsection (c) until an air tour management plan for the park is in effect.

(c) Interim operating authority.

(1) In general. Upon application for operating authority, the Administrator shall grant interim operating authority under this subsection to a commercial air tour

operator for commercial air tour operations over a national park or tribal lands for which the operator is an existing commercial air tour operator.

(2) Requirements and limitations. Interim operating authority granted under this subsection—

(A) shall provide annual authorization only for the greater of—

(i) the number of flights used by the operator to provide the commercial air tour operations over a national park within the 12-month period prior to the date of the enactment of this section [enacted April 5, 2000]; or

(ii) the average number of flights per 12-month period used by the operator to provide such operations within the 36-month period prior to such date of enactment, and, for seasonal operations, the number of flights so used during the season or seasons covered by that 12-month period;

(B) may not provide for an increase in the number of commercial air tour operations over a national park conducted during any time period by the commercial air tour operator above the number that the air tour operator was originally granted unless such an increase is agreed to by the Administrator and the Director;

(C) shall be published in the Federal Register to provide notice and opportunity for comment;

(D) may be revoked by the Administrator for cause;

(E) shall terminate 180 days after the date on which an air tour management plan is established for the park or tribal lands;

(F) shall promote protection of national park resources, visitor experiences, and tribal lands;

(G) shall promote safe commercial air tour operations;

(H) shall promote the adoption of quiet technology, as appropriate; and

(I) may allow for modifications of the interim operating authority without further environmental review beyond that described in this subsection, if—

(i) adequate information regarding the existing and proposed operations of the operator under the interim operating authority is provided to the Administrator and the Director;

(ii) the Administrator determines that there would be no adverse impact on aviation safety or the air traffic control system; and

(iii) the Director agrees with the modification, based on the professional expertise of the Director regarding the protection of the resources, values, and visitor use and enjoyment of the park.

(3) New entrant air tour operators.

(A) In general. The Administrator, in cooperation with the Director, may grant interim operating authority under this paragraph to an air tour operator for a national park or tribal lands for which that operator is a new entrant air tour operator without further environmental process beyond that described in this paragraph, if—

(i) adequate information on the proposed operations of the operator is provided to the Administrator and the Director by the operator making the request;

(ii) the Administrator agrees that there would be no adverse impact on aviation safety or the air traffic control system; and

(iii) the Director agrees, based on the Director's professional expertise regarding the protection of park resources and values and visitor use and enjoyment.

(B) Safety limitation. The Administrator may not grant interim operating authority under subparagraph (A) if the Administrator determines that it would create a safety problem at the park or on the tribal lands, or the Director determines that it would create a noise problem at the park or on the tribal lands.

(C) ATMP limitation. The Administrator may grant interim operating authority under subparagraph (A) of this paragraph only if the air tour management plan for the park or tribal lands to which the application relates has not been developed

13

within 24 months after the date of the enactment of this section [enacted April 5, 2000].

(d) Commercial air tour operator reports.

(1) Report. Each commercial air tour operator conducting a commercial air tour operation over a national park under interim operating authority granted under subsection (c) or in accordance with an air tour management plan or voluntary agreement under subsection (b) shall submit to the Administrator and the Director a report regarding the number of commercial air tour operations over each national park that are conducted by the operator and such other information as the Administrator and Director may request in order to facilitate administering the provisions of this section.

(2) Report submission. Not later than 90 days after the date of enactment of the FAA Modernization and Reform Act of 2012 [enacted Feb. 14, 2012], the Administrator and the Director shall jointly issue an initial request for reports under this subsection. The reports shall be submitted to the Administrator and the Director with a frequency and in a format prescribed by the Administrator and the Director.

(e) Exemptions. This section shall not apply to—

(1) the Grand Canyon National Park; or

(2) tribal lands within or abutting the Grand Canyon National Park.

(f) Lake Mead. This section shall not apply to any air tour operator while flying over or near the Lake Mead National Recreation Area, solely as a transportation route, to conduct an air tour over the Grand Canyon National Park. For purposes of this subsection, an air tour operator flying over the Hoover Dam in the Lake Mead National Recreation Area en route to the Grand Canyon National Park shall be deemed to be flying solely as a transportation route.

(g) Definitions. In this section, the following definitions apply:

(1) Commercial air tour operator. The term "commercial air tour operator" means any person who conducts a commercial air tour operation over a national park.

(2) Existing commercial air tour operator. The term "existing commercial air tour operator" means a commercial air tour operator that was actively engaged in the business of providing commercial air tour operations over a national park at any time during the 12-month period ending on the date of the enactment of this section [enacted April 5, 2000].

(3) New entrant commercial air tour operator. The term "new entrant commercial air tour operator" means a commercial air tour operator that—

(A) applies for operating authority as a commercial air tour operator for a national park or tribal lands; and

(B) has not engaged in the business of providing commercial air tour operations over the national park or tribal lands in the 12-month period preceding the application.

(4) Commercial air tour operation over a national park.

(A) In general. The term "commercial air tour operation over a national park" means any flight, conducted for compensation or hire in a powered aircraft where a purpose of the flight is sightseeing over a national park, within ½ mile outside the boundary of any national park (except the Grand Canyon National Park), or over tribal lands (except those within or abutting the Grand Canyon National Park), during which the aircraft flies—

(i) below a minimum altitude, determined by the Administrator in cooperation with the Director, above ground level (except solely for purposes of takeoff or landing, or necessary for safe operation of an aircraft as determined under the rules and regulations of the Federal Aviation Administration requiring the pilot-in-command to take action to ensure the safe operation of the aircraft); or

(ii) less than 1 mile laterally from any geographic feature within the park (unless more than ½ mile outside the boundary).

(B) Factors to consider. In making a determination of whether a flight is a commercial air tour operation over a national park for purposes of this section, the Administrator may consider—

(i) whether there was a holding out to the public of willingness to conduct a sightseeing flight for compensation or hire;

(ii) whether a narrative that referred to areas or points of interest on the surface below the route of the flight was provided by the person offering the flight;

(iii) the area of operation;

(iv) the frequency of flights conducted by the person offering the flight;

(v) the route of flight;

(vi) the inclusion of sightseeing flights as part of any travel arrangement package offered by the person offering the flight;

(vii) whether the flight would have been canceled based on poor visibility of the surface below the route of the flight; and

(viii) any other factors that the Administrator and the Director consider appropriate.

(5) National park. The term "national park" means any unit of the National Park System.

(6) Tribal lands. The term "tribal lands" means Indian country (as that term is defined in section 1151 of title 18 [18 USCS § 1151]) that is within or abutting a national park.

(7) Administrator. The term "Administrator" means the Administrator of the Federal Aviation Administration.

(8) Director. The term "Director" means the Director of the National Park Service.


## 49 U.S.C § 46110(a). JUDICIAL REVIEW


(a) Filing and venue. Except for an order related to a foreign air carrier subject to disapproval by the President under section 41307 or 41509(f) of this title [49 USCS § 41307 or 41509(f)], a person disclosing a substantial interest in an order issued by the Secretary of Transportation (or the Administrator of the

Transportation Security Administration with respect to security duties and powers designated to be carried out by the Administrator of the Transportation Security Administration or the Administrator of the Federal Aviation Administration with respect to aviation duties and powers designated to be carried out by the Administrator of the Federal Aviation Administration) in whole or in part under this part [49 USCS §§ 40101 et seq.], part B [49 USCS §§ 47101 et seq.], or subsection (l) or (s) of section 114 [49 USCS § 114] may apply for review of the order by filing a petition for review in the United States Court of Appeals for the District of Columbia Circuit or in the court of appeals of the United States for the circuit in which the person resides or has its principal place of business. The petition must be filed not later than 60 days after the order is issued. The court may allow the petition to be filed after the 60th day only if there are reasonable grounds for not filing by the 60th day.

## 40 C.F.R. § 1505.2. RECORD OF DECISION IN CASES REQUIRING ENVIRONMENTAL IMPACT STATEMENTS

At the time of its decision (§ 1506.10) or, if appropriate, its recommendation to Congress, each agency shall prepare a concise public record of decision. The record, which may be integrated into any other record prepared by the agency, including that required by OMB Circular A-95 (Revised), part I, sections 6(c) and (d), and part II, section 5(b)(4), shall:

(a) State what the decision was.

(b) Identify all alternatives considered by the agency in reaching its decision, specifying the alternative or alternatives which were considered to be environmentally preferable. An agency may discuss preferences among alternatives based on relevant factors including economic and technical considerations and agency statutory missions. An agency shall identify and discuss all such factors including any essential considerations of national policy which were balanced by the agency in making its decision and state how those considerations entered into its decision.

(c) State whether all practicable means to avoid or minimize environmental harm from the alternative selected have been adopted, and if not, why they were not. A monitoring and enforcement program shall be adopted and summarized where applicable for any mitigation.

## 40 C.F.R. § 1508.4. CATEGORICAL EXCLUSION

"Categorical exclusion" means a category of actions which do not individually or cumulatively have a significant effect on the human environment and which have been found to have no such effect in procedures adopted by a federal agency in implementation of these regulations (§1507.3) and for which, therefore, neither an environmental assessment nor an environmental impact statement is required. An agency may decide in its procedures or otherwise, to prepare environmental assessments for the reasons stated in §1508.9 even though it is not required to do so. Any procedures under this section shall provide for extraordinary circumstances in which a normally excluded action may have a significant environmental effect.

## 40 C.F.R. § 1508.10. ENVIRONMENTAL DOCUMENT

Environmental document includes the documents specified in § 1508.9 (environmental assessment), § 1508.11 (environmental impact statement), § 1508.13 (finding of no significant impact), and § 1508.22 (notice of intent).

## 43 C.F.R. § 46.215. CATEGORICAL EXCLUSIONS: EXTRAORDINARY CIRCUMSTANCES

Extraordinary circumstances (see paragraph 46.205(c)) exist for individual actions within categorical exclusions that may meet any of the criteria listed in paragraphs (a) through (l) of this section. Applicability of extraordinary circumstances to categorical exclusions is determined by the Responsible Official.

(a) Have significant impacts on public health or safety.

(b) Have significant impacts on such natural resources and unique geographic characteristics as historic or cultural resources; park, recreation or refuge lands; wilderness areas; wild or scenic rivers; national natural landmarks; sole or principal drinking water aquifers; prime farmlands; wetlands (EO 11990); floodplains (EO 11988); national monuments; migratory birds; and other ecologically significant or critical areas.

(c) Have highly controversial environmental effects or involve unresolved conflicts concerning alternative uses of available resources [NEPA section 102(2)(E)].

(d) Have highly uncertain and potentially significant environmental effects or involve unique or unknown environmental risks.

(e) Establish a precedent for future action or represent a decision in principle about future actions with potentially significant environmental effects.

(f) Have a direct relationship to other actions with individually insignificant but cumulatively significant environmental effects.

(g) Have significant impacts on properties listed, or eligible for listing, on the National Register of Historic Places as determined by the bureau.

(h) Have significant impacts on species listed, or proposed to be listed, on the List of Endangered or Threatened Species or have significant impacts on designated Critical Habitat for these species.

(i) Violate a Federal law, or a State, local, or tribal law or requirement imposed for the protection of the environment.

(j) Have a disproportionately high and adverse effect on low income or minority populations (EO 12898).

(k) Limit access to and ceremonial use of Indian sacred sites on Federal lands by Indian religious practitioners or significantly adversely affect the physical integrity of such sacred sites (EO 13007).

(l) Contribute to the introduction, continued existence, or spread of noxious weeds or non-native invasive species known to occur in the area or actions that may promote the introduction, growth, or expansion of the range of such species (Federal Noxious Weed Control Act and EO 13112).